IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| JEREMY GREY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   No. 21-02342-SHL-tmp |
| | ) |
| OVERTON SQUARE, LLC, | ) |
| | ) |
|     Defendant. | ) |

_____

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL DISCOVERY**
_____

Before the court by order of reference is plaintiff Jeremy Grey's Motion to Compel Discovery Responses, filed on November 1, 2021. (ECF No. 36.) The defendant filed a response on November 15, 2021. (ECF No. 42.) Grey then sought leave to file a reply, which was granted on November 22, 2021. (ECF No. 45, 46.) For the reasons below, the motion is GRANTED IN PART and DENIED IN PART.

## I.   BACKGROUND

Grey filed the present suit against defendant Overton Square, LLC, on May 25, 2021, alleging numerous violations of Americans with Disabilities Act ("ADA") guidelines and standards for public accommodations at Bayou Bar & Grill in Memphis, Tennessee. (ECF No. 1.) Grey sought injunctive relief that would require Overton Square to remedy the alleged violations and bring the relevant property in line with standards contained in the ADA Accessibility

Guidelines. (ECF No. 8 at 8-14.) Of relevance to the instant motion, Grey alleged the following:

> 34. The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.
>
> 35. Each of the violations alleged herein is readily achievable to modify to bring the Subject Property into compliance with the ADA.

(Id. at 15-16.) Overton Square filed an answer to the complaint on August 9, 2021. (ECF No. 21.) In response to the paragraphs quoted above, they replied:

> 34. OS denies the existence of any violations. If corrections of alleged violations are not readily achievable or are structurally impracticable, said violations are not violations under the requisite law.
>
> 34. OS denies the existence of any violations. If corrections of alleged violations are not readily achievable or are structurally impracticable, said violations are not violations under the requisite law.

(Id. at 8.) In general, Overton Square denied the existence of any ADA violations, focused on Grey's claims regarding the parking lot next to the Bayou Bar & Grill, and stated that "Easily accessible handicapped parking is readily available in the covered parking garage built to serve the Overton Square Development." (Id.)

The current dispute arose when Grey served his First Request for Production on Overton Square. Among these requests were ten that related, in some way, to financial records, debts, or property

interests of Overton Square. Specifically, Grey requested the following:

> DOCUMENT REQUEST NO. 1:
> All official records of OVERTON SQUARE, LLC -- including but not limited to: (i) bylaws, membership agreements and/or partnership agreements; (ii); articles of incorporation and/or articles of organization; (iii) meeting minutes; (iv) agendas; (v) summaries; (vi) organizational charts; and (vii) lists of shareholders, directors, officers, partners, or members-and documents sufficient to identify each person having an interest (whether equity, security, debt, or other legal interest) in OVERTON SQUARE, LLC, (including partners, shareholders, members, and/or agents) and the value of each such interest.
>
> DOCUMENT REQUEST NO. 2:
> All documents and communications relating to your ownership interest in any real property.
>
> DOCUMENT REQUEST NO. 3:
> All documents and communications relating to OVERTON SQUARE, LLC, ownership interest in any property— including but not limited to: (i): all checking and savings accounts (provide all bank statements); (ii) stocks, bonds and other securities; (iii) accounts receivable; (iv) inventory; (v) motor vehicles or watercraft: (vi) judgments held by you against third parties; (vii) rents receivable; (viii) intellectual property; (xi) and insurance policies.
>
> DOCUMENT REQUEST NO. 4:
> All documents and communications relating to OVERTON SQUARE, LLC, use of any safe or safe deposit box and the contents therein.
>
> DOCUMENT REQUEST NO. 5:
> All federal and state corporate tax returns OVERTON SQUARE, LLC has filed for the last five tax years (2016 to present), accompanied with supporting documents substantiating expenses listed on the Schedule C portions of each tax return.
>
> DOCUMENT REQUEST NO. 6:

>All documents and communications relating to any property of yours held by third parties.
>
>DOCUMENT REQUEST NO. 7:
>All documents and communications comprised of, containing or relating to any loans and/or mortgages owed to you.
>
>DOCUMENT REQUEST NO. 8:
>All documents and communications comprised of, containing or relating to any loan or mortgage applications (including any attached documents) completed by OVERTON SQUARE, LLC, or on OVERTON SQUARE, LLC's behalf, which currently has or has had any loan or mortgage balance during the last five fiscal years (2016 to present).
>
>DOCUMENT REQUEST NO. 9:
>All documents and communications comprised of, containing or relating to applications (including any attached documents) for any federal, state, or local government, or government agency sponsored or underwritten, grant or other funding, including but not limited to any financial assistance offered in response to the Coronavirus (COVID-19) pandemic, completed by you or on your behalf.
>
>DOCUMENT REQUEST NO. 10:
>All previous and current general liability, premises liability, errors and omissions, umbrella, or other insurance policies, including the complete policies and declarations sheets, held by you relating to the property with Parcel ID: 017068 00045C, and/or facility Bayou, located at 2094 Madison Avenue, Memphis, Tennessee, which are the subject of this action.

(ECF No. 36-2 at 5-7.) In their responses, Overton Square provided one blanket objection to all of these requests: "OS objects to this Request on the grounds that it is overly broad and unduly burdensome. None of the documents requested have any relevance to any claim asserted by Plaintiff or defense asserted by OS." (ECF No. 36-3 at 3-6.) The present motion was then filed on November 1,

2021. (ECF No. 36.) Grey argues that documents responsive to the above requests are essential for determining "whether the remedies to the barriers to entry are 'readily achievable'" under ADA statutes, regulations, and case law.

## II.   ANALYSIS

### A.   Scope of Discovery

The scope of discovery is governed by Federal Rule of Civil Procedure 26(b)(1), which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The party seeking discovery is obligated to demonstrate relevance. Johnson v. CoreCivic, Inc., No. 18-CV-1051-STA-tmp, 2019 WL 5089086, at *2 (W.D. Tenn. Oct. 10, 2019). Upon a showing of relevance, the burden shifts to the party opposing discovery to show, with specificity, why the requested discovery is not proportional to the needs of the case. William Powell Co. v. Nat'l Indem. Co., No. 1:14-CV-00807, 2017 WL 1326504, at *5 (S.D. Ohio Apr. 11, 2017), aff'd sub nom. 2017 WL 3927525 (S.D. Ohio June 21, 2017), and modified on reconsideration, 2017 WL 4315059 (S.D. Ohio Sept. 26, 2017). Six factors are relevant to proportionality: (1) "the importance of the issues at stake in the action;" (2) "the amount in controversy;" (3) "the parties' relative access to relevant information;" (4) "the parties' resources;" (5) "the importance of the discovery in

resolving the issues;" and (6) "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

**B.    Relevance of Overton Square's Finances**

The ADA provides that "no individual shall be discriminated against on the basis of disability" in places of public accommodation. 42 U.S.C. § 12182(a). The statute explicitly defines "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities . . . where such removal is readily achievable" as discrimination. 42 U.S.C. § 12182(b)(2)(A)(iv). An "existing facility is "a facility in existence on *any given date*, without regard to whether the facility may also be considered newly constructed or altered under this part." 28 C.F.R. § 36.104 (emphasis added). Removal is "readily achievable" where changes are "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). The statute notes that "the nature and cost of the action" and "the overall financial resources of the facility or facilities involved" must be considered "in determining whether an action is readily achievable." Id.

The Sixth Circuit has not determined which party bears the burden of establishing that a certain remedy is "readily achievable." Neal v. Divya Jyoti Ltd., No. 2:18-cv-958, 2019 WL

3416255, at *11 (S.D. Ohio Jul. 29, 2019). However, "district courts within the Sixth Circuit have regularly followed the Tenth Circuit's" approach, commonly called the "Colorado Cross test" after Colorado Cross Disability Coalition v. Hermanson Family Ltd. Partnership I, 264 F.3d 999, 1002-04 (10th Cir. 2001). Id. at *13 (citing Access 4 All, Inc. v. OM Mgmt., LLC, No. 2:06-cv-374, 2007 WL 1455991, at *10-11 (S.D. Ohio May 15, 2007) and Disabled Patriots of Am., Inc. v. ODCO Invs., Ltd., No. 3:04-cv-7399, 2006 WL 782725, at *4 (N.D. Ohio Mar. 27, 2006)). In Colorado Cross, the Tenth Circuit adopted a burden shifting framework that requires the plaintiff to "initially present evidence tending to show that the suggested method of barrier removal is readily achievable under the particular circumstances." Colorado Cross, 264 F.3d at 1002. This evidence includes "precise cost estimates and specific design details regarding [the] proposed reasonable accommodation." Roberts v. Royal Atlantic Corp., 542 F.3d 363, 373 n.6 (2d Cir. 2008) (applying Colorado Cross). Further, the plaintiff must "link the estimated costs of [the] proposals with [the defendant's] ability to pay for them." Gathright-Dietrich v. Atlanta Landmarks, Inc., 452 F.3d 1269, 1275 (11th Cir. 2006) (applying Colorado Cross). If the plaintiff presents this evidence, the burden of persuasion shifts to the defendant to "prove that the requested barrier removal method is not readily achievable." Colorado Cross, 264 F.3d at 1007. Again, a court "must consider [] the nature and

cost of removing the barriers and the financial resources of the defendant facility" in evaluating a "readily achievable" argument. Neal, 2019 WL 3416255 at *13 (citing 42 U.S.C. § 12181(9)).

Grey argues his desired remedies are readily achievable and that Overton Square's finances are relevant to his claim. (ECF No. 8 at 15.) Overton Square is less than clear on whether they deny this. While their answer flatly "denies the existence of any violations[,]" it also notes that "if corrections of alleged violations are not readily achievable or are structurally impracticable, said alleged violations are not violations[.]" (ECF No. 21 at 8.) In their brief, Overton Square correctly note that the court must ultimately determine whether or not a modification is readily achievable. (ECF No. 42 at 2.) They go on to state that "Plaintiff's burden is to show that the remediation of alleged violations is easily accomplished and able to be carried out without much difficulty or expense," which is the definition of readily achievable. (Id.) However, their brief also states that "Defendant's answer does not allege that the remedies are not readily achievable, but that they are structurally impracticable" and that "[defendant] does not set forth a 'readily achievable' defense." (Id. at 3.) They seek to not put their "financial condition at issue" and only raise "the defense of structural impracticability (i.e., raising the level of the parking lot from [one street] to [another])". (Id. at 5-6.)

Overton Square's argument that their finances are not at issue fails on multiple fronts. First, their denial of ADA violations rests on the argument that "corrections of alleged violations are not readily achievable or are structurally impracticable," at least in the alternative. (ECF No. 21 at 8.) Second, the "structurally impracticable" defense they claim to exclusively assert in their brief is inapplicable to this case. The term comes from 42 U.S.C. § 12183(a)(1), which includes two extra definitions of "discrimination" under the ADA that are applicable where a facility is being constructed for "first occupancy." But Grey pled discrimination violations under 42 U.S.C. § 12182(b)(2)(A)(iv), which applies the "readily achievable" standard to accommodations at all "existing facilities." (ECF No. 8 at 15.) The facilities here already exist.[1] To the extent that Overton Square's defenses relate entirely to "non-monetary qualitative issues such as feasibility [and] engineering/structural concerns," these objections would nevertheless rely on asserting a "readily achievable" defense. See Colorado Cross, 264 F.3d at 1010 (Lucero,

---

[1]The Department has made clear that "existing facility means a facility in existence on any given date, without regard to whether the facility may also be considered newly constructed or altered under this part." 28 C.F.R., Part 36, App'x A, Guidance on Revisions to ADA Regulation on Nondiscrimination on the Basis of Disability by Public Accommodations and Commercial Facilities ("It has been the Department's view that newly constructed or altered facilities are also existing facilities subject to title III's continuing barrier removal obligation, and that view is made explicit in this rule.")

J., concurring and dissenting) (noting that "easily accomplishable" addresses construction and design concerns).

Third, even if the defendant only argued structural impracticability, Grey alleges violations that are clearly not structurally impracticable, such as placing "upright Van Accessible signage" and paving over broken pavement. (ECF No. 1 at 7-9.) He is not merely seeking to "rais[e] the level of the parking lot from [one street] to [another]." (ECF No. 42 at 5-6.) For these other violations, Grey "must initially present evidence tending to show that the suggested method of barrier removal is readily achievable under the particular circumstances," which Overton Square may then rebut by demonstrating that they are not achievable "without much difficulty or expense." Colorado Cross, 264 F.3d at 1002. As noted above, to make this case, Grey must "link the estimated costs of [the] proposals with [the defendant's] ability to pay for them." Gathright-Dietrich, 452 F.3d at 1275. "A plaintiff must present sufficient evidence so that a defendant can evaluate the proposed solution to a barrier, the difficulty of accomplishing it, the cost implementation, and the economic operation of the facility." Id. at 1274. To make this showing, Grey requires some evidence of the defendant's financial status. Access 4 All, Inc. v. W & D Davis Inv. Co., Ltd., No. 2:06-CV-504, 2007 WL 614091, at *4 (S.D. Ohio Feb. 21, 2007) (granting access to five years of financial records and noting that "plaintiffs

need not prove their case before they are entitled to discovery related to their claims.") Based on the above, Grey requires at least some information on Overton Square's finances in order to make his case. Gaylor v. Greenbriar of Dahlonega Shopping Center, Inc., 975 F. Supp. 2d 1374, 1380 (N.D. Ga. 2013).

**C.   Proportionality of Grey's Requests**

While the issues at stake in this action are of public importance, the burden and expense of requiring Overton Square to produce what amounts to an entire audit of their financial situation, property interests, ownership, and corporate structure is patently disproportionate to the needs of the case. Colorado Cross and its progeny suggest that the plaintiff merely requires enough information to show whether the financial impact of the proposed remedies "would be relatively immaterial and easily accomplishable." See e.g., Colorado Cross, 264 F.3d at 1008. Such calculations do not require the wide breadth of information that Grey seeks here.

The undersigned instead ORDERS that Overton Square produce financial statements (specifically balance sheets, income statements, cash flow statements, and statements of shareholders'/owners' equity) and federal and state tax returns for 2018, 2019, and 2020. These records should be produced under a protective order to safeguard Overton Square's privacy and any sensitive information contained within. The parties shall submit

a joint protective order to the undersigned within five days for review and approval. The documents identified above shall be produced within ten days after the entry of the protective order. All other discovery sought in the motion to compel is hereby DENIED.

### III. CONCLUSION

For the above reasons, Grey's Motion to Compel is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

December 17, 2021
Date
